639 P.2d 1053

**STATE of Arizona, Respondent,**

v.

**Garvin Dale WHITE, Petitioner.**

**No. 1 CA–CR 5049–PR.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 1, 1981.

Order denying Motion for Rehearing
Jan. 7, 1982.

Petition for Review Denied Jan. 26, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Division, Phoenix, and Jay V. Flake, Navajo County Atty. by William W. Clayton, Deputy County Atty., Holbrook, for respondent.

Craig Mehrens, Phoenix, for petitioner.

OPINION

JACOBSON, Presiding Judge.

The sole issue presented by this post conviction relief proceeding is whether a warrant of extradition signed by the governor of Arizona which extradites a defendant to a sister state operates to divest the state of Arizona of jurisdiction to try the defendant for criminal charges pending in Arizona at the time the warrant of extradition was signed.

By this proceeding the defendant, Garvin Dale White, attacks his conviction in Navajo County Superior Court for transportation of marijuana on the grounds that the state of Arizona lost jurisdiction to try him on this charge. The procedural history of this matter is as follows.

The defendant was apprehended as the pilot of an airplane which carried some 1100 pounds of marijuana into Navajo County in 1975. He was indicted in 1976 for possession of marijuana for sale, A.R.S. § 36–1002.06 [1] and transportation of marijuana, A.R.S. § 36–1002.07.[2] When a jury was unable to agree on a verdict, a mistrial was

1. Laws 1961, 1st S.S., Ch. 1, § 3.

2. *Ibid.*

declared. Subsequently, the defendant moved to suppress items of evidence taken from the airplane. The motion was granted by the trial court, and the proceedings were stayed pending an appeal of the ruling by the state.

While the state's appeal was pending, the defendant was free on bond. He was eventually arrested on unrelated charges in Yuma County. It then appeared that the California authorities were seeking the defendant's extradition to answer charges in that state. Arizona's Governor Raul Castro signed a warrant of extradition to turn the defendant over to the California authorities. The defendant challenged his extradition by filing a writ of *habeas corpus*, but after a hearing the writ was denied by the Yuma County Superior Court. In May of 1977, the defendant was turned over to California and incarcerated in that state. He was apparently discharged from California custody in September of 1977.

In November 1977, this court reversed the trial court's order which granted White's motion to suppress. *State v. White*, 118 Ariz. 47, 574 P.2d 840 (App. 1977). The Arizona Supreme Court refused several requests by the defendant to stay the Navajo County trial, and a second trial began in March of 1978. The trial court's minute entry reflects an avowal by defendant's attorney that the defendant was aware of the trial date and that transportation to Arizona had been arranged, but he did not appear for trial and was tried *in absentia*. He was found guilty of both charges, and was sentenced in May of 1978 to a term of 20 to 45 years imprisonment, on the transportation of marijuana charge only. The conviction and sentence were affirmed by this court. *State v. White*, Memorandum Decision Number 1 CA–CR 3505, filed May 12, 1981.

The pleadings in this matter indicate that in January 1979, almost one year after the defendant was tried *in absentia* in Arizona, he was arrested in Louisiana, charged with possession of marijuana with intent to distribute, and incarcerated in that state. He was subsequently extradited to Arizona to serve the sentence previously imposed in the Navajo County proceedings. Louisiana then requested extradition of the defendant for trial. A Governor's warrant of extradition was executed here in Arizona, which gave Louisiana temporary physical custody of White. However, the agreement specifically stipulated pursuant to A.R.S. § 31–481 that the defendant would be returned to Arizona at the conclusion of the Louisiana proceedings. He was returned to Louisiana, where apparently he has escaped and presently is at large.

The defendant began these proceedings by filing a petition for writ of *habeas corpus* in the Superior Court of Maricopa County in November of 1979. Properly treated as a petition for post-conviction relief under Rule 32, Rules of Criminal Procedure, the matter was transferred to the Navajo County Superior Court. After the filing of extensive pleadings by both the defendant and the state, the petition was denied by the Navajo County Superior Court. A timely motion for rehearing was likewise denied, and the matter is before this court following the filing of a timely petition for review.

The sole issue before us is whether the state of Arizona waived its jurisdiction over the defendant prior to his second trial and conviction, by allowing his extradition to the state of California while the Navajo County criminal charges were pending against him.[3]

Before discussing the Arizona case law and the Arizona statute, a review of the law in this area would be helpful. The earlier cases seem to support the defendant's contention that the granting of extradition operates as a waiver of jurisdiction over the defendant by the asylum state. The rationale to reach this result varied.

---

3. No issue is presented here as to the propriety of the extradition proceedings between Arizona and Louisiana. According to the pleadings, the State of Arizona specifically reserved the right to the return of the defendant after Louisiana finished with its criminal proceedings, and petitioner apparently concedes that there is no waiver of jurisdiction where the asylum state specifically agrees to the return of a prisoner. See *Walsh v. State ex rel. Eyman*, 104 Ariz. 202, 450 P.2d 392 (1969); *State v. Canady*, 124 Ariz. 599, 606 P.2d 815 (1980).

*In re Whittington*, 34 Cal.App. 344, 167 P. 404 (1917) analyzed the issue from the standpoint of whether the defendant was a "fugitive" within the meaning of Article 4, Section 2, of the United States Constitution.[4] Reasoning that an asylum state having voluntarily released a defendant to a demanding state, it could not reobtain custody of the defendant, for the defendant had not fled from justice within the meaning of the constitutional provision. Other courts have considered the Governor's warrant of extradition as amounting to an executive order of pardon for crimes committed in the asylum state. *Ex parte Guy*, 41 Okl.Cr. 1, 269 P. 782 (1928); *People v. Bartley*, 383 Ill. 437, 50 N.E.2d 517 (1943); *State v. Saunders*, 288 Mo. 640, 232 S.W. 973 (1921).

We are not persuaded by either of these rationale. First, in our opinion, the process by which two sovereign states of this nation handle the mechanics of transferring a defendant charged with having committed crimes in both states, even though constitutionally required, remains a matter of comity between sister states. *Commonwealth v. Ashe*, 114 Pa.Supr. 119, 173 A. 715 (1934). This comity has now been codified in the Uniform Criminal Extradition Act which has been enacted in both Arizona and California. In fact, based upon the Act, the rationale of *In re Whittington* has been specifically disapproved by the California Supreme Court. *In re Patterson*, 64 Cal.2d 357, 49 Cal.Rptr. 801, 411 P.2d 897 (1966).

█ Likewise, the rationale that "a warrant of extradition equals an executive pardon" is not viable in Arizona. In Arizona the power of the governor to pardon is limited by the recommendations of the Board of Pardons and Paroles, A.R.S. § 31–402.[5] Moreover, our research leads us to conclude that at the present time the

majority rule in the United States is that the executive granting of a request for extradition does not constitute a waiver of jurisdiction by the asylum state. *Davis v. Rhyne*, 181 Kan. 443, 312 P.2d 626 (1957); 22 C.J.S. *Criminal Laws* § 111; 35 C.J.S. *Extradition* § 21(b).

The defendant, however, relies primarily upon the following language of Division 2 of this court in *State v. Barlean*, 121 Ariz. 347, 348, 590 P.2d 463, 464 (App.1978):

The rule is that when the requisition from the demanding state has been honored *and the fugitive surrendered*, such surrender will operate as a waiver of jurisdiction. (Emphasis in original).

The authority cited for this proposition is *People v. Bartley, supra.* As has been pointed out, the rationale of *People v. Bartley* was based upon a pardon theory which we conclude is simply inapplicable in Arizona. Moreover, *State v. Barlean* fails to properly consider the Arizona statute on this subject. *Also see* the analysis of *State v. Knapp*, 123 Ariz. 402, 599 P.2d 855 (App. 1979).

In Arizona, Title 13, Ch. 38, Art. 5 of the Arizona Revised Statutes contains our version of the Uniform Criminal Extradition Act. Section 19 of the Uniform Criminal Extradition Act is contained in A.R.S. § 13–1319.[6] The statute provides as follows:

§ 13–1319. Persons under criminal prosecution in this state at time of requisition.

If a criminal prosecution has been instituted against such person under the laws of this state and is still pending the governor, at his discretion, either may surrender him on demand of the executive authority of another state or may hold him until he has been tried and dis-

---

**4.** U.S.Const. Art. 4, § 2, provides:

A Person charged in any State with Treason, Felony, or other Crime, *who shall flee from Justice*, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime. (emphasis added).

**5.** A.R.S. § 31–402 provides in part:

The board of pardons and paroles shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons. No reprieve, commutation, parole or pardon may be granted by the governor unless it has first been recommended by the board.

**6.** Renumbered as § 13–3859 by Laws 1977, Ch. 142, § 120, eff. October 1, 1978.

charged or convicted and punished in this state.

A simple reading of this statute, which is identical in language to the version in the revised criminal code, indicates that the governor of Arizona has discretion to either hold a detainee here pending resolution of Arizona criminal charges, or to deliver him to the demanding state. The statute by its terms does not grant any right of acquittal to a defendant if the option of granting the extradition request is chosen, nor is there any indication of a legislative desire that jurisdiction over the detainee be waived when that option is chosen. Nor can we see any rational reason why the legislature would have intended that result. We agree with the observation made in *In re Patterson, supra*:

> The rule [that waiver of jurisdiction applies] preserves no legitimate right of the person held in custody and may deprive him of his right to a speedy trial, for the state first taking him into custody will in all probability be unwilling to transfer him temporarily for the purpose of trial in another state if this accommodation will be interpreted as a waiver of further jurisdiction over him.

49 Cal.Rptr. at 804, 411 P.2d at 900.

Thus, if the statement in *Barlean v. State* is intended to state the law on this subject for Arizona, we decline to follow it.

Finally, the defendant relies upon the following dicta in *State v. Canady*, 124 Ariz. 599, 601, 606 P.2d 815, 817 (1980):

> *Assuming without deciding* that extradition waives the surrendering state's right to thereafter demand the individual's return as a fugitive from justice if released in the demanding jurisdiction, it does not necessarily follow that the surrendering jurisdiction waives all claims it holds against that person. (Emphasis supplied).

However, the specific holding in *State v. Canady* was that in the absence of affirmative evidence in the record of intentional waiver of jurisdiction, the surrendering state retains jurisdiction to require the defendant to satisfy its obligations to the asylum state. Again, *State v. Canady* does not refer to the applicable statute.

We therefore conclude that the legislature, via A.R.S. § 13–1319 and the identical current version, § 13–3859, did not intend that jurisdiction by the state of Arizona over a detainee should be lost when this state releases a detainee to another jurisdiction pursuant to our statutory extradition process. Further, we see no constitutional or equitable considerations which require a different result. In *Bishop v. Cupp*, 7 Or.App. 349, 490 P.2d 524 (1971), the court said:

> Interjurisdictional transfers to clear up outstanding charges protect the prisoner's constitutional right to a speedy trial and the state's interest in the orderly administration of justice.

490 P.2d at 525.

In our opinion, when states under the doctrine of comity assist each other in the apprehension of criminals and bring them to speedy justice, the principles flowing therefrom are not primarily for the benefit of the felon, but, in addition are also intended for the benefit of the citizens of the respective states to assure that escaping criminals are brought to justice. Conjunctively, the defendant is entitled to have his guilt or innocence speedily determined in whatever jurisdiction he is charged. A rule which would impede the expeditious exchange of prisoners between states would infringe both these rights.

We therefore hold that the state of Arizona, as the asylum state, retains the power to reassert jurisdiction over a detainee after it allows extradition to another state. The trial court's conclusion that petitioner was not entitled to any relief was fully warranted and its action of denying the Rule 32 petition was therefore correct.

Review granted; relief denied.

EUBANK, J., and J. THOMAS BROOKS, Judge, concur.

Note: The Honorable J. THOMAS BROOKS, Coconino County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.